UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AKILO LASHA GRIGGS,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No.: 3:26-CR-117-TAV-DCP |

**MEMORANDUM OPINION AND ORDER**

This criminal case is before the Court on defendant's Motion for Revocation of Detention Order [Doc. 19]. Specifically, defendant moves the Court to revoke the Order of Detention [Doc. 16] entered by United States Magistrate Judge Debra C. Poplin on September 8, 2026 [Doc. 19, p. 1]. The government filed a response in opposition [Doc. 21]. For the reasons discussed below, defendant's motion [Doc. 19] is **DENIED**.

## I. Background

Defendant is charged with one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine and 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B) (Count One), one count of distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count Two), four counts of distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts Three through Six), and one count of possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Count Seven) [Doc. 3]. On September 2, 2026,

the parties appeared before Judge Poplin for a detention hearing, and after hearing proof and arguments, she took the matter under advisement [Doc. 13; *see* Doc. 17 (Transcript)].

After weighing the factors set forth in 18 U.S.C. § 3142(g), Judge Poplin found that the government showed "by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community and by a preponderance of the evidence that no conditions will reasonably assure the appearance of the defendant" [Doc. 16-1, p. 4]. In coming to such finding, Judge Poplin relied on the nature and circumstances of the charged offenses, the weight of the evidence of defendant's dangerousness and risk of nonappearance, factors relating to the history and characteristics of defendant, and the nature and seriousness of the danger to the community that would be posed by defendant's release [*Id.* at 1–4]. And as to defendant's proposal to be placed with his grandmother as a third-party custodian upon release, Judge Poplin questioned the effectiveness of her serving as a third-party custodian [*Id.* at 4]. Specifically, defendant reported to the United States Probation Office ("USPO") that he was living with his grandmother, at least part-time, during the period in which he is accused of committing the instant offenses [*Id.*]. Accordingly, Judge Poplin ordered that defendant be detained pending trial [*Id.*].

On September 18, 2026, defendant filed the instant motion, requesting that the Court revoke the Order of Detention [Doc. 19, p. 1]. Defendant relies on the arguments and proof presented at the detention hearing while emphasizing his grandmother's offer to act as a third-party custodian, his connections to the community, his lawful employment for several

months before his arrest, and his limited criminal history [*Id.* at 4–6]. In arguing that he does not pose a risk of flight or danger to the community, defendant notes that, for several months following the execution of the search warrant, he continued to report to work, where he was ultimately arrested [*Id.* at 6].

On October 1, 2026, the government responded in opposition [Doc. 21], arguing that the Magistrate Judge correctly concluded that defendant should be detained pending trial. The government reiterates its evidence and the seriousness of the charged offenses and notes that defendant has an admitted history of substance abuse and a concerning criminal history [*Id.* at 4–7]. Ultimately, the government submits that "[t]he Magistrate Judge reasonably concluded that the proposed conditions would be inadequate in this case" [*Id.* at 8].

## II. Standard of Review

"If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). A district court reviews *de novo* a magistrate judge's order of pretrial detention. *United States v. Blair*, No. 3:15-CR-56, 2015 WL 3486026, at *1 (E.D. Tenn. June 2, 2015) (citations omitted); *see also United States v. Marcrum*, 953 F. Supp. 2d 877, 880 (W.D. Tenn. 2013), *aff'd*, No. 13-6008 (6th Cir. Nov. 1, 2013). A second hearing is not required on a § 3145(b) motion, particularly where "the material information is already in the record from the initial detention hearing." *See United States v. Walden*, No. 3:24-CR-19, 2024 WL 2121232, at *1 (E.D. Tenn. May 10, 2024)

(citation omitted). Given defendant relies on the arguments and proof presented at the detention hearing, the Court does not find it necessary to hold a second hearing.

## III. Applicable Law

As relevant here, 18 U.S.C. § 3142(e)(3)(A)–(B) provides that:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed—
>
> (A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . ; [or]
>
> (B) an offense under section 924(c) . . . of this title[.]

"This presumption leaves a defendant with the burden to produce evidence that they do not pose a danger to the community or a risk of flight." *United States v. Hughes*, 668 F. Supp. 3d 744, 747 (S.D. Ohio 2023) (citing *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)). Even when a defendant meets his relatively modest burden of production, the presumption favoring detention remains a relevant factor for the Court's consideration. *Stone*, 608 F.3d at 945.

When reviewing a magistrate judge's detention order, the Court relies on the four factors set out in 18 U.S.C. § 3142(g):

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;

> (3) the history and characteristics of the person, including—
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). "If, after a hearing[,] . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e). "The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or the community by clear and convincing evidence." *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004) (citation omitted).

## IV. Analysis

### A. Rebuttable Presumption

The Court begins with the rebuttable presumption in favor of detention. *See* 18 U.S.C. § 3142(e)(3). Given defendant's indictment, probable cause exists to conclude that he violated the Controlled Substances Act, specifically 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 924(c) [*See* Doc. 3]. *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir.

1985) (finding that an indictment "is sufficient to establish probable cause" for purposes of the rebuttable presumption); *Stone*, 608 F.3d at 945. Moreover, with respect to the Controlled Substances Act violations (Counts One through Six), the applicable penalty statutes prescribe maximum terms of imprisonment greater than 10 years. 18 U.S.C. § 3142(e)(3)(A); *see* 21 U.S.C. §§ 841(b)(1)(A), (B), (C). Therefore, all of defendant's offenses leave him facing the presumption of detention. 18 U.S.C. § 3142(e)(3)(A)–(B). Accordingly, defendant bears the burden to produce evidence showing he is not a risk of flight nor a danger to the community.

After review, the Court finds no reason to disagree with the Magistrate Judge's assessment that defendant rebutted the presumption [*See* Doc. 16, p. 2; Doc. 16-1, p. 1]. And it does not appear that the parties dispute this finding. Thus, the Court turns to the § 3142(g) factors to determine if defendant should be released, keeping in mind that the presumption remains a consideration. *See Stone*, 608 F.3d at 945.

**B. Section 3142(g) Factors**

**1. Nature and Circumstances of the Offenses Charged**

The nature and circumstances of the offenses charged favor detention. As stated previously, the indictment in this case charges defendant generally with conspiracy to distribute and possess with intent to distribute methamphetamine, distribution of methamphetamine, distribution of cocaine base, and possession of a firearm in furtherance of a drug trafficking offense [*See* Doc. 3]. Notably, each of the offenses defendant has been charged with carry penalties of potentially long periods of imprisonment, reflecting

the seriousness of the crimes. *See* 21 U.S.C. § 841(b)(1)(A) (providing a penalty of "a term of imprisonment which may not be less than 10 years or more than life"); *id.* § 841(b)(1)(B) (providing a penalty of "a term of imprisonment which may not be less than 5 years and not more than 40 years"); *id.* § 841(b)(1)(C) (providing a penalty of "a term of imprisonment of not more than 20 years"); 18 U.S.C. § 924(c)(1)(A)(i) (providing a penalty of "a term of imprisonment of not less than 5 years" and up to life); *United States v. Dixson*, No. 20-1998, 2021 WL 1502723, at *1 (6th Cir. Mar. 22, 2021) (upholding detention of the defendant and agreeing with the district court that a 10-year term of incarceration "reflected the seriousness of the crime and 'increase[d] the likelihood of flight'").[1] Additionally, crimes involving controlled substances and firearms are specific considerations under 18 U.S.C. § 3142(g)(1).

As to the circumstances surrounding these offenses,[2] the government proffered and offered video evidence at the detention hearing that defendant was involved in five controlled buys, "which revealed the sale of methamphetamine and crack cocaine" [Doc. 16-1, p. 1]. During the first controlled buy, a young child was present in the home at which

---

[1] The Court also notes that any term of imprisonment imposed for a violation of 18 U.S.C. § 924(c) is to run consecutively with any other term of imprisonment imposed. 18 U.S.C. § 924(c)(1)(D)(ii).

[2] The Court notes that "[n]othing in [§ 3142] shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). Indeed, "the § 3142(g) analysis is concerned with a practical assessment of the defendant's dangerousness, rather than an adjudication of guilt for a particular offense." *United States v. Tolbert*, No. 3:09-CR-56, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (citing *Stone*, 608 F.3d at 948); *accord United States v. Boone*, No. 5:25-CR-127, 2025 WL 3033896, at *5 (E.D. Ky. Oct. 30, 2025) (noting that the Bail Reform Act "requires the Court to consider all allegations, both proven and unproven, in its calculus of the defendant's dangerousness").

defendant sold the confidential informant approximately two ounces of methamphetamine [Doc. 17, pp. 6–7]. As for the remaining controlled buys, which spanned a period of approximately two months, defendant sold the confidential informant approximately 7.8 grams of crack cocaine during the second controlled buy, approximately 7.9 grams of crack cocaine during the third, approximately 16.9 grams of crack cocaine during the fourth, and approximately 8.2 grams of crack cocaine during the fifth [*Id.* at 8–11].

Following these controlled buys, a search warrant was obtained for the residence where each of the buys occurred, which defendant sometimes shared with the mother of his children [*Id.* at 13; Doc. 16-1, p. 1]. During the search, at which several people including defendant and one of his minor children were present, law enforcement seized, *inter alia*, a digital scale located next to two gaming controllers,[3] a mushroom Belgian chocolate bar,[4] a Ruger .380 caliber handgun with a loaded magazine, and various parts and empty magazines for other firearms [Doc. 17, pp. 13–18].

The Sixth Circuit has stated that "drug trafficking is a serious offense that, in itself, poses a danger to the community[]" and has noted its routine affirmation of, "on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence." *Stone*, 608 F.3d at 947

---

[3] As noted by the Magistrate Judge, the video of the first controlled buy showed the minor child discussing that they enjoy playing video games [Doc. 16-1, p. 2].

[4] The Magistrate Judge also noted the government's position that, although chemical testing had not been administered, the packaging was consistent with commercial products containing psychedelic substances [Doc. 16-1, p. 2; *see also* Doc. 17, p. 18].

n.6 (citations omitted). The possession of firearms in the context of drug trafficking is equally as serious, if not more, as it only "escalates the level of danger associated with the offense." *United States v. Brooks*, 685 F. Supp. 3d 476, 479 (E.D. Mich. 2023); *accord United States v. Spalding*, No. 3:24-CR-118, 2025 WL 1969922, at *3 (W.D. Ky. July 16, 2025) ("[T]he alleged use of a firearm to facilitate trafficking adds the risk of gun violence.").

Accordingly, and after considering the nature and circumstances of defendant's alleged offenses set forth *supra*, the Court finds that this first factor weighs in favor of detention.

**2. Weight of the Evidence**

Next, the Court considers the weight of the evidence against defendant. 18 U.S.C. § 3142(g)(2). "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948 (citations omitted). The Court notes that "[t]his factor is somewhat duplicative of § 3142(g)(1) and (3) because, in considering a defendant's overall dangerousness, the Court must consider the facts of the crime alleged as well as evidence that the defendant has been dangerous in the past, such as criminal history[.]" *United States v. Burns*, No. 5:26-CR-2, 2026 WL 411732, at *5 (E.D. Ky. Feb. 9, 2026).

Again, defendant faces a number of drug trafficking charges, which are undeniably dangerous offenses. *See Stone*, 608 F.3d at 947 n.6 ("[D]rug trafficking is a serious offense that, in itself, poses a danger to the community."); *United States v. Taylor*, 449 F. Supp. 3d

668, 673 (E.D. Ky. 2020) ("It is beyond dispute that distributing narcotics is a serious offense that poses dire health risks to the community[.]"); *United States v. Davis*, No. 3:23-CR-78, 2023 WL 5111962, at *2 (E.D. Tenn. Aug. 9, 2023) ("Methamphetamine can be deadly[.]"); *United States v. Washington*, No. 3:22-CR-72, 2022 WL 17168604, at *3 (E.D. Tenn. Nov. 22, 2022) (citation omitted) ("Methamphetamine trafficking . . . presents a substantial risk to human life."). And as noted above, "[p]ossessing a firearm in furtherance of drug trafficking makes an already dangerous situation worse." *Washington*, 2022 WL 17168604, at *3; *accord United States v. Flowers*, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) ("The Court finds the use and sale of drugs to establish significant danger. The addition of guns to the equation only increases that danger."). Specifically, such possession "suggests a readiness to use or to engage in armed confrontations, heightening the risk to law enforcement, innocent bystanders, and potential rivals or competitors[.]" *Brooks*, 685 F. Supp. 3d at 479.

The Court would also emphasize, as specific to defendant's case, the presence of a child during one of the controlled buys as well as during the search, which yielded a number of items consistent with drug trafficking [Doc. 16-1, pp. 1–2; Doc. 17, pp. 6–7, 13–18]. Defendant's willingness to put a child at risk while conducting a drug transaction only increases the weight of evidence of his dangerousness. *See United States v. Hughes*, 668 F. Supp. 3d 744, 749 (S.D. Ohio 2023) ("Defendant's drug trafficking charges, and his alleged willingness to put children at risk while conducting these activities, favors detention[.]"); *United States v. Goodman*, No. 3:23-CR-96, 2023 WL 8461635, at *3 (W.D.

Ky. Dec. 6, 2023) ("The [g]overnment also presented photographs of [the defendant] with his young child in the vehicle at one of the controlled-buy transactions. . . . Based on this evidence, [the magistrate judge] reasonably found that [the defendant] poses a danger . . . to his young child in particular."); *United States v. Brown*, No. 3:17-CR-124-9, 2017 WL 3034691, at *2 (M.D. Tenn. July 18, 2017) (noting, in evaluating the weight of the evidence of dangerousness, the government's proffer of several drug transactions where controlled purchases were made from the defendant "at his residence near a school and in the presence of children").

Next, the Court looks to defendant's criminal history, as outlined in the USPO's Amended Pretrial Services Report ("PSR").[5] "In considering the § 3142(g) factors, the court may consider both actual convictions and mere arrests or indictments to assess the defendant's dangerousness, though the latter will typically weigh less heavily in favor of detention." *Tolbert*, 2017 WL 6003075, at *5 (citations omitted). Defendant here has a relatively limited criminal history. In 2020, defendant failed to appear in court following issuance of a traffic citation, resulting in suspension of his driver's license from November 2020 until March 2024 [PSR, p. 5]. In 2023, when defendant was 22 years old, he was arrested for driving without a license [*Id.* at 3]. Defendant was subsequently convicted and assessed a $10 fine [*Id.*].

---

[5] The Court may reference the Pretrial Services Report in its *de novo* review of the Magistrate Judge's order of pretrial detention. *United States v. Carter*, No. 1:20-CR-62-1, 2021 WL 687858, at *2 (S.D. Ohio Feb. 23, 2021).

More recently, in February 2026, defendant was arrested on charges of a window tint violation, driving on a revoked license, possession of a weapon with intent to go armed, and two child restraint violations [*Id.* at 3–4]. At the detention hearing, the government proffered evidence as to the circumstances of this arrest, which include defendant driving at a high rate of speed with children in the car before being stopped by police [Doc. 17, pp. 18–19; *see* PSR, pp. 3–5]. Additionally, after pulling over, defendant moved from the driver's seat to the backseat, where he appeared to be sitting on a small child whose car seat was not properly secured [PSR, p. 4]. Although the child restraint and driving on a revoked license charges were dismissed, defendant was convicted of the window tint and firearm charges and sentenced to time served [*Id.* at 3–4].

While defendant does not have an extensive criminal history, the Court does not find that it outweighs the inherent dangerousness of defendant's offenses and the dangerousness demonstrated by allowing a child to be present during a drug transaction, as discussed *supra*. This dangerousness is further illustrated by defendant's conduct concerning his February 2026 arrest, during which defendant's children were also present. Additionally, and as the Magistrate Judge noted, although defendant does not have a significant history of nonappearance, his failure to appear for a traffic citation, "when the stakes were much lower," gives rise to concerns about his risk of nonappearance in this case [*See* Doc. 16-1, p. 2].

Ultimately, the Court finds that the weight of the evidence of dangerousness here weighs in favor of detention.

### 3. History and Characteristics of Defendant

Next, the Court turns to defendant's history and characteristics, specifically his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings[.]" 18 U.S.C. § 3142(g)(3)(A).[6]

Defendant is 25 years old and was born in Knoxville, Tennessee [PSR, p. 2]. Defendant has been a lifelong resident of East Tennessee [*Id.* at 1; *see* Doc. 17, pp. 23–24]. Defendant reports having a close relationship with his mother, Heather Crawford, who has an extensive criminal history and is currently homeless in Knoxville [PSR, p. 2]. Defendant's father, Adonta Griggs, is a court-ordered resident of the Morgan County Residential Recovery Court in Wartburg, Tennessee [*Id.*]. Although defendant advised the USPO that he had no relationship with his father, the government proffered that defendant appeared to be acting at his father's direction when he contacted the confidential informant in this case [Doc. 16-1, p. 3; Doc. 17, p. 10].

Defendant was raised by his grandmother, Patricia Arnwine, due to his parents' drug use [PSR, p. 2]. At the detention hearing, Ms. Arwine testified that she was willing to serve as defendant's third-party custodian, acknowledging that doing so would require her to contact the USPO if defendant were to violate any conditions [Doc. 17, pp. 22–23].

---

[6] The Court does not find § 3142(g)(3)(B) to be applicable in defendant's case.

Defendant has four sisters, two of whom live in North Dakota and the other two in Knoxville [PSR, p. 2]. Defendant has never married, but he has an intermittent relationship with Ashlyn Torra, the mother of his six-year-old son and three-year-old daughter [*Id.*]. Defendant and Ms. Torra are expecting their third child, whose delivery is scheduled for November 13, 2026 [*See* Doc. 26].

As to education, defendant attended school until the eleventh grade [PSR, p. 2]. From April 2026 until his arrest at the workplace on August 7, 2026, defendant was employed as a flagger at Robbie Bulla Construction, earning approximately $2600 per month [Doc. 16-1, p. 3; *see* Doc. 17, p. 24]. According to defendant's Financial Affidavit ("FA"), as provided by the USPO, defendant's assets consist of two vehicles with an approximate total value of $11,500, and he owes approximately $4,000 on a third vehicle [FA, p. 1].

As to his physical health, defendant states that he is in good physical health with no medical issues [PSR, p. 2]. As to his mental health, defendant reports that he believes he was diagnosed with attention deficit hyperactivity disorder (ADHD) as a child [*Id.* at 3]. Defendant reports experiencing symptoms of depression but states that he has not received a formal diagnosis [*Id.*]. Defendant also believes that he suffers from post-traumatic stress disorder and anxiety, which he reports likely resulted from law enforcement officers pulling firearms on him when he was nine years old [*Id.*].

Regarding substance abuse, defendant admits to first using marijuana at age 13 [*Id.*]. Although he reports using marijuana infrequently, the PSR states that Ms. Torra informed

the USPO that defendant smokes marijuana on a daily basis [*Id.*]. Further, the police report from defendant's February 2026 arrest notes that defendant told officers he smoked marijuana daily [*Id.* at 4–5]. Defendant consumed alcohol for the first time at age 19, and he reports rarely drinking [*Id.* at 3]. Defendant states that he has never participated in substance abuse treatment, and he does not believe he needs such treatment [*Id.*]. As discussed in detail above, defendant has a limited criminal history and one instance of failing to appear [*Id.* at 3–5].

The Court acknowledges that some of defendant's history and characteristics favor his release, specifically his lack of a significant criminal history, his long-standing connection to Knoxville, and his lawful employment prior to his arrest. However, other aspects favor his detention, namely defendant's conflicting statements about his apparent regular use of marijuana and his contact with his father, who currently has pending federal charges within this district [*See* Case No. 3:26-cr-118]. Moreover, defendant's criminal record, despite its *de minimis* nature, remains a component of his history and characteristics. Here, the Court reiterates its concerns about the dangerousness of defendant's conduct in the presence of minor children. Further, although defendant was employed for a few months prior to his arrest, it appears from the record that he obtained employment only after the search warrant was executed.[7]

---

[7] The Court notes that the controlled buys in this case took place between December 2025 and February 2026, with the search occurring in February 2026 [Doc. 17, pp. 6–13]. As previously discussed, defendant's only reported employment began in April 2026 and continued until his arrest in August 2026 [*Id.* at 24; Doc. 16-1, p. 3].

Considering all the above, the Court finds, on balance, that this factor weighs slightly in favor of defendant's detention.

**4. Nature and Seriousness of the Danger Posed by Defendant's Release**

The final factor under § 3142(g), "the nature and seriousness of the danger to any person or the community that would be posed by the person's release[,]" weighs in favor of detention, especially in light of the presumption. 18 U.S.C. § 3142(g)(4); *see United States v. Lattner*, 23 F. App'x 363, 364 (6th Cir. 2001) ("The court may continue to give the presumption some weight by keeping in mind that Congress has determined 'that drug offenders pose a special risk of flight and dangerousness to society.'" (quoting *United States v. Hare*, 873 F.2d 796, 798–99 (5th Cir. 1989))). Specifically, and as reiterated several times throughout this Memorandum Opinion and Order, drug trafficking is a serious and dangerous offense. *Stone*, 609 F.3d at 947 n.6. And the danger inherent in drug trafficking is only heightened by the addition of firearms. *Brooks*, 685 F. Supp. 3d at 479.

While the Court recognizes that defendant's grandmother, Ms. Arnwine, is willing to serve as a third-party custodian if he were to be released, the Court has the same concerns about her ability to serve as a custodian as those expressed by the Magistrate Judge. Namely, defendant lived with his grandmother during at least part of the period in which he was alleged to have committed the charged offenses [*See* Doc. 16-1, p. 4; PSR, p. 2]. Further, as noted by the Magistrate Judge and as the Court agrees here, there is reason to doubt the suitability of defendant's other proposed conditions, including home detention

with electronic monitoring and random drug screens, as well as whether defendant would comply with such conditions [*See* Doc. 16-1, p. 4].

Taking all of this into consideration, the Court finds that this final factor weighs in favor of detention.

## V. Conclusion

Ultimately, the nature and circumstances of the offense, the weight of the evidence, the history and characteristics of defendant, and the nature and seriousness of the danger to the community all weigh in favor of defendant's continued pretrial detention. The Court is convinced that no condition or combination of conditions for release would reasonably assure the safety of the community. Accordingly, defendant's motion [Doc. 19] is hereby **DENIED**. Defendant shall remain detained pending trial.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE